[DO NOT PUBLISH]

# In the
# United States Court of Appeals
# For the Eleventh Circuit

_____

No. 23-14171

Non-Argument Calendar

_____

MICHAEL JEROME JENNINGS,

                                                  Plaintiff-Appellant,

*versus*

CHRISTOPHER SMITH,
in his individual capacity,
JUSTIN GABLE,
in his individual capacity,
JEREMY BROOKS,
in his individual capacity,
CHILDERSBURG, ALABAMA, CITY OF,

                                                  Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 1:22-cv-01165-RDP

_____

Before WILSON, ROSENBAUM, and GRANT, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Michael Jennings appeals the district court's grant of summary judgment for three City of Childersburg Police Officers based on qualified immunity and grant of the City of Childersburg's motion to dismiss based on state-agent immunity. Jennings argues that the officers are not entitled to qualified immunity because they lacked probable cause for his arrest, and without this showing, the City is not entitled to state agent immunity. After careful review, we reverse the district court.

I.

On May 22, 2022, a 911 caller requested that police check on her neighbors' home. She reported that her elderly white neighbors had left town and she saw an unfamiliar gold vehicle and a young Black male around the home. Childersburg Police Officer Christopher Smith responded to the call.

Upon arrival, Officer Smith saw Jennings, a Black man, with a garden hose and asked what he was doing on the property. Jennings responded, "watering flowers." Officer Smith asked if

Jennings lived at the residence, and he said he did not. Officer Smith explained that police had received a 911 call regarding someone on the property. Jennings replied, "I'm supposed to be here. I'm Pastor Jennings. I live across the street. . . . I'm looking out for the house while they gone, I'm watering they flowers."

In response, Officer Smith said, "Okay, that's cool, do you have, like, ID?" and motioned with his hands as if to request a driver's license. Jennings stopped watering the flowers and walked away from Officer Smith, stating in a raised voice, "Oh, no man, I'm not gonna give you no ID." Officer Smith asked, "Why not?" and Jennings replied, "I ain't did nothing wrong." Officer Smith responded, "Well, look, listen I'm not saying that you did nothing wrong, but there's a suspicious person in the yard, and if you're not going to identify yourself. . . ." Jennings interrupted to say that he did not have to identify himself.

Childersburg Police Officer Justin Gable then arrived at the scene. Officer Gable also asked Jennings if he lived at the house, and Jennings answered, "You see a Black man out here watering neighbors' flowers. . . . You have no right to approach me if I ain't did nothing suspicious or nothing wrong. Told him I'm a pastor, I pastor at a church." The parties continued talking over each other, and Jennings eventually retorted, "I don't want to hear you, you want to lock me up, lock me up. . . . I'm not gonna show y'all anything. I'm gonna continue to water these flowers." The officers continued trying to speak with Jennings, but he walked away from them yelling, "I don't care who called y'all. . . . Lock me up and see

what happens." Officers Smith and Gable followed Jennings and instructed him to "just come here and talk to us." Jennings continued distancing himself and demanded that the officers tell him who called them. Officer Smith stated, "If you would let us talk to you, we could figure stuff out." Officer Gable warned Jennings that he would get an "obstruction charge" if he continued walking away. Jennings stopped, turned around, and said, "You can do whatever you want. Do it." Officers then placed Jennings in handcuffs. Officer Gable explained, "We're just trying to talk to you. . . . I don't want to argue with you. . . . I don't want to arrest you either." Jennings and the officers continued yelling over each other, and Jennings eventually said, "I don't have to ID myself." Officer Gable replied, "I have a call on you, you have to identify yourself to me." Jennings continued to refuse to identify himself, and Gable reiterated, "It's okay if you're out here to water the plants, talk to us."

By this time, Childersburg Police Sergeant Jeremy Brooks had also arrived. As Jennings continued to yell at the officers, Sergeant Brooks interrupted to explain that the officers had a right to identify him. Sergeant Brooks continued, "Everything is being audio and video recorded. You won't shut your mouth." Jennings shouted, "You don't shut your mouth. You don't talk to me like I'm a child, boy!" Officers then arrested Jennings and placed him in the back of the police cruiser.

Jennings sued Officer Christopher Smith, Officer Justin Gable, and Sergeant Jeremy Brooks under 42 U.S.C. § 1983 for unlawful and retaliatory arrest and sued the officers and the City of

23-14171               Opinion of the Court                        5

Childersburg (collectively, Appellees) under Alabama law for false arrest. The officers moved for summary judgment, and the City moved to dismiss. The district court granted both motions, finding that the officers were entitled to qualified and state-agent immunity and the City was entitled to state-agent immunity because probable cause existed for the arrest. Jennings timely appealed.

## II.

We review the summary judgment decision of the district court de novo, applying "the same legal standard used by the district court" and construing the facts "in the light most favorable to the non-moving party." *Smith v. Owens*, 848 F.3d 975, 978 (11th Cir. 2017).

## III.

We first address the related issues of qualified immunity and unlawful arrest. Generally, when public officials perform discretionary duties, as the parties agree the officers were in this case, they may claim the protection of qualified immunity. *See Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1263–64 (11th Cir. 2004). To rebut this defense, the plaintiff must show both that "the defendant's conduct violated a statutory or constitutional right" and the right was "clearly established." *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007) (internal quotation marks omitted). "We may decide these issues in either order," but the plaintiff must satisfy both points to negate qualified immunity. *Hinson v. Bias*, 927 F.3d 1103, 1116 (11th Cir. 2019).

Jennings argues that Appellees violated his Fourth Amendment right to be free from unreasonable searches and seizures by arresting him without probable cause. Whether a seizure, including an arrest, is reasonable under the Fourth Amendment depends on the presence of probable cause. *Case v. Eslinger*, 555 F.3d 1317, 1326–27 (11th Cir. 2009). Probable cause exists "where a reasonable officer could conclude—considering all of the surrounding circumstances, including the plausibility of the explanation itself—that there was a substantial chance of criminal activity." *Edger v. McCabe*, 84 F.4th 1230, 1236 (11th Cir. 2023) (internal quotation marks omitted).

Probable cause is the cornerstone of Jennings' appeal. The existence of probable cause both allows for a qualified immunity defense and defeats § 1983 claims for false and retaliatory arrests. *Carter v. Butts Cnty.*, 821 F.3d 1310, 1319 (11th Cir. 2016); *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1297 (11th Cir. 2019). Probable cause also blocks Jennings' state-law false arrest claim. *See Ex parte Harris*, 216 So. 3d 1201, 1214 (Ala. 2016) (finding state-agent immunity for an officer under Alabama Code § 6-5-338(a) on plaintiff's false arrest claim because of the existence of probable cause).

Even without probable cause, a court may still grant qualified immunity to an officer who had arguable probable cause for the arrest. *Skop*, 485 F.3d at 1137. Arguable probable cause exists where "a reasonable officer, looking at the entire legal landscape at the time of the arrests, could have interpreted the law as permitting the arrests." *Garcia v. Casey*, 75 F.4th 1176, 1186 (11th Cir. 2023)

23-14171               Opinion of the Court                        7

(quotation marks omitted). The arguable probable cause inquiry in a false arrest case is "no different from the clearly established law inquiry in any other qualified immunity case." *Id.* at 1187. If the court "conclude[s] that the officers had arguable probable cause then we conclude that their violation of the law was not clearly established and vice-versa." *Edger*, 84 F.4th at 1236.

The presence of actual or arguable probable cause "depends on the elements of the alleged crime and the operative fact pattern." *Id.* at 1237 (quotation marks omitted). Here, Jennings was charged under Alabama Code § 13A-10-2(a)[1] with obstructing governmental operations. Appellees maintain they had at least arguable probable cause under the statute because (1) Jennings used intimidation or physical interference to impair the officers in the governmental function of investigating the scene and (2) Jennings committed an independent unlawful act by failing to adequately identify himself to intentionally prevent investigation.

---

[1] The Alabama statute for obstructing governmental operations provides the following:

> A person commits the crime of obstructing governmental operations if, by means of intimidation, physical force or interference or by any other independently unlawful act, he: (1) Intentionally obstructs, impairs or hinders the administration of law or other governmental function; or (2) Intentionally prevents a public servant from performing a governmental function.

Ala. Code § 13A-10-2(a).

To start, the facts do not support that Jennings intimidated or physically interfered with the officers. Section 13A-10-2 requires that a person interfere with law enforcement using a "physical movement, threat, or motion of violence"—"words alone" are not enough. *D.A.D.O. v. State*, 57 So. 3d 798, 806–07 (Ala. Crim. App. 2009); *Garcia*, 75 F.4th at 1188. Walking *toward* officers while yelling or speaking can supply the physical interference or intimidation element; walking *away* does not. *See generally D.A.D.O.*, 57 So. 3d at 806–07 (yelling at an officer while leaving an officer's presence falls short of intimidation or physical interference under § 13A-10-2). Here, even though Jennings shouted and made potentially threatening statements like "see what happens," he did so over his shoulder as he was walking away from the officers. Without more, intimidation or physical interference cannot support a finding of probable cause.

Next, Appellees contend that Jennings' refusal to identify himself was an independent unlawful act under Alabama Code § 15-5-30. This statute allows an Alabama police officer to stop a person in a public place, if he "reasonably suspects" that person has committed, is committing, or is about to commit a crime, and demand of him three things: "his name, address and an explanation of his actions." *Id.*[2]

---

[2] While the Fourth Amendment does not impose an obligation to answer police questions, state law may require a person to identify himself during a stop to investigate reasonable suspicion. *See Hiibel v. Sixth Jud. Dist. Ct. of Nev.*, 542

23-14171               Opinion of the Court                        9

Jennings argues that he was not arrested for refusing to give those three pieces of information but rather because he declined to show physical identification. In support, Jennings relies on this court's decision in *Edger v. McCabe*, 84 F.4th 1230 (11th Cir. 2023). *Edger* held that an Alabama police officer violates clearly established law when she arrests a person solely for failing to provide a driver's license or physical identification under Alabama Code § 15-5-30. 84 F.4th at 1239–40. We agree that this case falls within the purview of *Edger*.

In *Edger*, two police officers arrived at the scene where Edger, a mechanic, was working on a client's car. *Id.* After a couple initial questions, one officer demanded to see Edger's ID. *Id.* When Edger refused, the officers arrested him, even though he continued trying to explain himself. *Id.*

The court held that no reasonable officer could interpret the law to permit Edger's arrest based on three main principles of clearly established law. *Id.* at 1238–39. First, under the Fourth Amendment, the police are free to ask questions, and the public is free to ignore them. *Id.* at 1239. Second, any legal obligation to speak to the police and answer their questions arises as a matter of state law. *Id.* Third, the plain text of the statute authorizes police to demand only three things: "name, address and an explanation of his actions." Ala. Code § 15-5-30. Ultimately, while there are no "magic words" that an officer must utter, there is a marked

---

U.S. 177, 187 (2004). Alabama Code § 15-5-30 is one so-called "stop-and-identify" statute.

difference between asking for three specific pieces of information and demanding a physical license or ID. *Edger*, 84 F.4th at 1239.

Like Edger, Jennings was arrested for his refusal to provide officers with physical identification. When Officer Smith explained that he was on the property to investigate a suspicious person, Jennings clarified, "I'm supposed to be here. I'm Pastor Jennings. I live across the street. . . . I'm looking out for the house while they gone, I'm watering they flowers." This information closely tracks what officers may request under Alabama Code § 15-5-30 (name, address, and an explanation for one's actions). However, Officer Smith proceeded to request Jennings' "ID" and to gesture with his hands in a way that indicated he meant a physical card.

In other circumstances, this court has acknowledged "we are loath to second-guess the decisions made by police officers in the field." *See Penley v. Eslinger*, 605 F.3d 843, 854 (11th Cir. 2010). Police officers "conduct approximately 29,000 arrests every day—a dangerous task that requires making quick decisions in circumstances that are tense, uncertain, and rapidly evolving." *Nieves v. Bartlett*, 587 U.S. 391, 403 (2019) (internal quotation marks omitted). But here, the officers never asked the fundamental questions in trying to ascertain a person's full name or address: "What is your name?" or "What is your address?" Even if there are no "magic words" that an officer must utter, *Edger*, 84 F.4th at 1239, it must be obvious that officers actually seek a name, address, and explanation. Given that Jennings had already told officers he was "Pastor Jennings," he lived across the street, and he was there to water his neighbors'

23-14171               Opinion of the Court                        11

flowers, the officers' subsequent commands for Jennings to "identify himself" and statements that "you have to identify yourself to me" were clearly requests for something more—physical identification.

While it is always advisable to cooperate with law enforcement officers, Jennings was under no legal obligation to provide his ID. Therefore, officers lacked probable cause for Jennings' arrest for obstructing government operations because Jennings did not commit an independent unlawful act by refusing to give ID. Additionally, because *Edger* explained that Alabama Code § 15-5-30 was, and is, clearly established law, 84 F.4th at 1239, these officers lacked even arguable probable cause. Accordingly, we reverse the district court's grant of summary judgment on Jennings' unlawful arrest claim because the officers are not entitled to qualified immunity.

IV.

Jennings also argues that the district court erred by granting summary judgment to the officers on his § 1983 First Amendment retaliatory arrest claim. To bring a First Amendment claim for retaliation, a plaintiff generally must show: (1) he "engaged in constitutionally protected speech," (2) "the defendant's retaliatory conduct adversely affected that protected speech," and (3) "a causal connection exists between the defendant's retaliatory conduct and the adverse effect on the plaintiff's speech." *DeMartini*, 942 F.3d at 1289. In the retaliatory arrest context, a plaintiff must affirmatively prove the absence of probable cause for the arrest. *Nieves*, 587 U.S. at 404. The absence of probable cause generally provides "weighty

evidence that the officer's animus caused the arrest." *Id.* at 402. Meanwhile, the existence of probable cause usually bars a retaliatory arrest claim as a matter of law. *Id.* at 408. Still, once the plaintiff disproves probable cause, he must then prove causation using the framework established by Supreme Court in *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 276 (1977).

In *Mt. Healthy*, a teacher sued a city board of education after the board decided not to rehire him. *Id.* The plaintiff alleged that the adverse employment decision resulted from a call he made to a local radio station, but the board claimed that the teacher's unprofessionalism, not his protected speech, prompted the decision. *Id.* at 282–84. To determine the true cause, the Supreme Court held that the plaintiff must show that the speech was a "substantial" or "motivating factor," and if the plaintiff meets that burden, the burden shifts to the defendant to establish that he "would have reached the same decision . . . even in the absence of the protected conduct." *Id.* at 287. This burden-shifting framework for proving causation now applies not only in the employment context but also in retaliatory arrest cases. *See Nieves*, 587 U.S. at 404.

On appeal, Jennings argues that (1) his speech was constitutionally protected, (2) his arrest adversely affected his speech, and (3) his speech was a motivating factor for the arrest. First, we agree that Jennings' speech was constitutionally protected. The First Amendment protects "a significant amount of verbal criticism and challenge directed at police officers." *City of Houston v. Hill*, 482 U.S. 451, 461 (1987). And Jennings' verbal jabs at police do not rise to

the level of "fighting words" that might remove them from First Amendment protection. *See id.* at 461–62. Second, the arrest clearly adversely affected Jennings' speech. An arrest would certainly "deter a person of ordinary firmness from exercising his or her First Amendment rights." *Bennett v. Hendrix*, 423 F.3d 1247, 1252 (11th Cir. 2005).

The third element is causation, which asks whether the officer "would have taken the action complained of" even "without the impetus to retaliate." *Hartman v. Moore*, 547 U.S. 250, 260 (2006). To start, this court's no-probable-cause finding lends "weighty evidence that the officer's animus caused the arrest." *Nieves*, 587 U.S. at 402. But that does not end the analysis. Jennings claims that his speech was a motivating factor for his arrest because the officers decided to arrest him only after he protested the way the officers were speaking to him and Officer Brooks explained, "You talked your way into going to jail." This evidence seemingly points to speech as a motivating factor for the arrest.

For their part, Appellees argue that they arrested Jennings because he did not identify himself. Even though Alabama law does not allow officers to arrest someone for refusing to provide an ID, the officers here may be able to escape liability for First Amendment retaliatory arrest if they can show they would have arrested Jennings even in the absence of his protected speech. Ultimately, both sides present differing evidence for the cause of Jennings' arrest. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury

functions." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Therefore, we reverse the district court's grant of summary judgment to the officers on Jennings' retaliatory arrest claim and leave the jury to decide if Jennings' arrest "would have been initiated without respect to retaliation." *DeMartini*, 942 F.3d at 1296 (quotation marks omitted).

V.

Finally, Jennings appeals the grant of summary judgment to the officers and the dismissal of the claim against the City of Childersburg based on the district court's findings of state-agent immunity. "We review *de novo* a district court's interpretation of a state law." *Jones v. United Space All., LLC*, 494 F.3d 1306, 1309 (11th Cir. 2007). The state-agent immunity defense is based in Alabama law. Specifically, Alabama Code § 6-5-338 grants municipal officers "immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties." This immunity does not apply when an officer "acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law." *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000).

The existence of probable cause, particularly the facts establishing probable cause, "contradict any suggestion of malicious intents or bad faith." *Ex parte Harris*, 216 So. 3d at 1214 (citing *Wood v. Kesler*, 323 F.3d 872, 884 (11th Cir. 2003)). A finding of even arguable probable cause allows officers to invoke state-agent immunity

under § 6-5-338. *Id.* And when state-agent immunity applies to police officers, it also applies to the municipality that employs them. *See Ex parte Dixon*, 55 So. 3d 1171, 1179 (Ala. 2010).

On appeal, Jennings contends that officers acted willfully, maliciously, fraudulently, in bad faith, and beyond their authority by arresting him in retaliation for his speech. He also argues that officers acted under a mistaken interpretation of law for arresting him for refusing to give physical identification. Without a showing of probable cause, the record does not allow us to make the state-agent immunity determination. Appellees make no argument on appeal that they should be still entitled to state-agent immunity in the absence of probable cause. The district court did not conduct any analysis of state-agent immunity independent of the actual or arguable probable cause inquiry. Accordingly, we reverse the district court's grant of summary judgment on the state-law false arrest claim, vacate the dismissal of the state law claim against the City, and remand for further proceedings.

**REVERSED and REMANDED.**